Solomon FRIED, Plaintiff-Appellee,

v.

NEW YORK LIFE INSURANCE COMPANY, Defendant-Appellee,

and

United States of America, Defendant-Appellant.

Nos. 18, 19, Dockets 23968, 23969.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1956.

Decided Feb. 15, 1957.

Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, John J. Kelley, Jr., Attys., Dept. of Justice, Washington, D. C., Leonard P. Moore, U. S. Atty., Elliott Kahaner, Asst. U. S. Atty., Brooklyn, N. Y., Meyer Rothwacks, Washington, D. C., for defendant-appellant.

Morris K. Siegel, New York City (Morris K. Siegel, Vincent J. Crowe, New York City, on the brief), for plaintiff-appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Solomon Fried, born Dec. 16, 1898, took out five policies of life insurance on

his life with New York Life Insurance Company between June 8, 1922 and February 8, 1930, naming his wife to be the beneficiary thereof upon his death. The total face amount of these policies is $25,000. Fried reserved the right to change the beneficiary. The policies were Twenty-Payment Life policies, and at all times material here were in full force and effect.

Fried also paid twenty additional annual premiums under each policy contract in excess of the premiums required to insure his life, in return for which the insurance company contracted to pay Fried, if he should become totally and presumably permanently disabled before age 60, a total of $250 each month that such disability continued. Each policy further provided that Fried during his lifetime, and without the consent of the beneficiary named by him to receive the policy proceeds upon his death, could receive every benefit, exercise every right, and enjoy every privilege conferred upon the insured.

In December, 1951, the Bureau of Internal Revenue assessed income tax deficiencies against Fried in the sum of $263,174.69, representing alleged deficiencies for the years 1944, 1945, 1946, 1947, 1948 and 1949.

New York Life Insurance Company was promptly served that month with a notice of an income tax lien. In January, 1952, a copy of the lien was filed, warrants of distraint were issued, and levy was made upon the company. In March, 1952, a final notice and demand was served upon it.

On November 2, 1953, Fried became totally and presumably permanently disabled. The insurance company admitted its contract liability to pay him $250 each month from that date forward as long as he remained so disabled, but declined to make payment because of the government's levy. Fried sued. New

York Life sought to have the United States joined as a necessary party because of the levy. This was done and Fried's suit was then removed to the U. S. District Court. In the meantime the insurance company also declined to turn over any of these monthly payments to the government and the United States sued it under 26 U.S.C.A. § 3710 for non-compliance with the levy, notice and demand. Fried was then joined as a defendant in this second suit; the two suits were consolidated; New York Life paid into court the disability benefit payments that had by then accrued; Fried and the United States each moved for summary judgment. Fried's motion was granted and the government appeals.

The sole question before us is whether the income tax lien attaches to these monthly disability benefit payments. The Court below held that it did not. We hold otherwise, reverse the judgment below, and direct that judgment be entered for the United States.

It is admitted that Fried had a contractual right to these sums each month which the insurance company could not defeat. Therefore (unless prevented by some limitation upon it) the government by proper levy could require that these sums be applied upon Fried's delinquent taxes. The sufficiency of the undertakings of the government to prevent these payments from coming into the possession of Fried and to be so applied upon his delinquent taxes is not questioned.

The Court below held that a limitation upon the power of the United States to enforce its lien does exist and that the government is prevented from reaching these monthly avails of these insurance contracts because under a New York statute these sums are not "liable to execution for the purpose of satisfying any debt or liability of the insured." [1] It is well settled law, however, that State

---

1. Article 7, Section 166, paragraph 2 of New York Insurance Law, Book 27, McKinney's Consolidated Laws of New York Ann., c. 28, reads as follows:

"§ 166 * * *

"2. No money or other benefits payable or allowable under any policy of insurance against disability arising from accidental injury or bodily infirmity or ailment of the person insured, shall be

exemption statutes are ineffective against a Federal statutory lien for federal taxes.

Kieferdorf v. Commissioner of Internal Revenue, 9 Cir., 1944, 142 F.2d 723, 725, certiorari denied, 1944, 323 U.S. 733, 65 S.Ct. 69, 89 L.Ed. 588; Kyle v. McGuirk, 3 Cir., 1936, 82 F.2d 212, 213; Shambaugh v. Scofield, 5 Cir., 1942, 132 F.2d 345; Cannon v. Nicholas, 10 Cir., 1935, 80 F.2d 934, 935; Jones v. Kemp, 10 Cir., 1944, 144 F.2d 478, 480.

The New York Court of Appeals agrees that New York may not interfere with the power of Congress to levy, and then to collect, federal taxes on income. In re Rosenberg's Will, 1935, 269 N.Y. 247, 199 N.E. 206, 105 A.L.R. 1238, certiorari denied Rosenberg v. U. S., 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392.

A similar New York statute expressing the same state policy of protecting a disabled person's disability benefit payments from creditors' levies[2] was held ineffective against the federal tax lien in United States v. Ocean Accident & Guarantee Corporation, Ltd., D.C.S.D.N.Y.1948, 76 F.Supp. 277.

If Congress had provided in the Internal Revenue Code for such an exemption, or if Congress had adopted as exemptions under the Code the exemptions set forth under State law, the holdings relied upon by the court below in Fink v. O'Neil, 106 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196 and in Custer v. McCutcheon, 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239, might have been applicable, but no such provisions appear.[3]

liable to execution for the purpose of satisfying any debt or liability of the insured, whether incurred before or after the commencement of the disability, except as provided in subsection four, and except * * * "

The second paragraph of Section 166 was enacted into law as Section 55-b of the New York Insurance Law and was entitled as follows: "Exemption of disability insurance from execution." Chapter 626, Laws of 1934, New York State.

2. Article 2, Section 33 of New York Workmen's Compensation Law, Book 64, McKinney's Consolidated Laws of New York Ann. c. 67, was the statute involved. It reads as follows:

"§ 33. Assignments; exemptions

"Compensation or benefits due under this chapter shall not be assigned, released or commuted except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived. Compensation and benefits shall be paid only to employees or their dependents, except * * * "

3. 26 U.S.Code, 1952 ed. Sections 3691 and 3692 read as follows:

"§ 3691. Property exempt from distraint

"(a) Enumeration. There shall be exempt from distraint and sale, if belonging to the head of a family—

"(1) School books and wearing apparel. The school books and wearing apparel necessary for such family; also

"(2) Arms. Arms for personal use;

"(3) Livestock. One cow, 2 hogs, 5 sheep and the wool thereof, provided the aggregate market value of said sheep shall not exceed $50;

"(4) Fodder. The necessary food for such cow, hogs, and sheep, for a period not exceeding thirty days;

"(5) Fuel. Fuel to an amount not greater in value than $25;

"(6) Provisions. Provisions to an amount not greater than $50;

"(7) Household furniture. Household furniture kept for use to an amount not greater than $300; and

"(8) Books and tools of trade or profession. The books, tools, or implements, of a trade or profession, to an amount not greater than $100."

"§ 3692. Levy

"In case of neglect or refusal under section 3690, the collector may levy, or by warrant may authorize a deputy collector levy, upon all property and rights to property, except such as are exempt by the preceding section, belonging to such person, or on which the lien provided in section 3670 exists, for the payment of the sum due, with interest and penalty for nonpayment, and also of such further sum as shall be sufficient for the fees, costs, and expenses of such levy."

26 U.S.Code, Section 6334 of the 1954 Internal Revenue Code, reads as follows:

"§ 6334. Property exempt from levy

"(a) Enumeration.—There shall be exempt from levy—

"(1) Wearing apparel and school books. —Such items of wearing apparel and such school books as are necessary for the taxpayer or for members of his family;

In fact the language of the House Ways and Means and Senate Finance Committees contained in their respective Committee Reports to their respective Houses of Congress with reference to Section 6334(c) of the I.R.C. of 1954 demonstrate that no such provisions were even contemplated when the 1954 Code was under consideration.[4]

Finally it is argued upon appeal that these regularly recurring sums due and payable month after month to this living delinquent taxpayer as long as he lives, sums that will cease being payable upon his death, are similar to the "proceeds" of a life insurance policy due and payable to a beneficiary after the death of an insured delinquent taxpayer, and that our holding in Rowen v. Commissioner of Internal Revenue, 2 Cir., 215 F.2d 641, requires us to affirm the decision below. We find this contention difficult to comprehend. In Rowen, 215 F.2d 641 at page 649, we stated that the New York statute applicable to our decision in that case was *not* an exemption statute but a statute declaratory of a substantive right. In support of that rationale we compared the provision of the applicable statute there with the provision of the statute applicable here, and we there pointed out that the statute involved here *is* an express exemption provision. We also clearly indicated that the Kieferdorf case would be followed by us whenever an express exemption provision should be before us. And also see United State v. Truax, 5 Cir., 1955, 223 F.2d 229, 231. We find no substance whatever to this contention.

Reversed, and it is ordered that judgment be entered for the United States below.

---

"(2) Fuel, provisions, furniture, and personal effects.—If the taxpayer is the head of a family, so much of the fuel, provisions, furniture, and personal effects in his household, and of the arms for personal use, livestock, and poultry of the taxpayer, as does not exceed $500 in value;

"(3) Books and tools of a trade, business or profession.—So many of the books and tools necessary for the trade, business, or profession of the taxpayer as do not exceed in the aggregate $250 in value.

\*     \*     \*     \*     \*

"(c) No other property exempt.—Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)."

26 U.S.Code, Section 6331 of the 1954 Internal Revenue Code reads as follows:

"§ 6331. Levy and Distraint

"(a) Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

\*     \*     \*

"(b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

4. In the Report of the House Ways & Means Committee (*House Report No. 1337, 83rd Congress, 2d Session, at pp. A408–A409*) and in the Report of the Senate Finance Committee (Senate Report No. 1622, 83rd Congress, 2d Session, at pp. 577–578) the identical language appears, as follows:

"Subsection (c) of this section states that no property or rights to property, other than the properties specifically made exempt in this section, shall be exempt from levy by reason of any other law of the United States. *Provisions of State law cannot grant an exemption from levy*, and this subsection makes it clear that no other provision of Federal law shall exempt property from levy. This section is not intended to make any change with respect to the status of life insurance policies insofar as levy thereon is concerned." (Italics added.)