**UNITED STATES of America, et al., Plaintiffs,**

v.

**RIGGS NATIONAL BANK, et al., Defendants.**

**Civ. A. No. 84–2889.**

United States District Court, District of Columbia.

April 30, 1986.

Edward J. Snyder, Richard L. Switzer, Robert Gordon, Tax Div., Dept. of Justice, Washington, D.C., and J. Brian Ferrel, Acting Chief, Civil Trial Section, Central Region, Dept. of Justice, for plaintiffs.

Richard P. Schifter, Steve Krantz, Arnold & Porter, Washington, D.C., for defendants.

## MEMORANDUM

FLANNERY, Senior District Judge.

This matter comes before the court on the parties' cross-motions for summary judgment. Oral argument was heard on April 4, 1986. For the reasons set forth below, the government's motion is granted and defendant Riggs National Bank's motion is denied.

## I. *Background*

In her last will and testament, Isabel G. Zantzinger established a trust fund. By the terms of the fund, her three children were entitled to distributions of income generated by the trust fund during their lifetimes and her grandchildren were entitled to distributions of both income and principal during their lifetimes. There were certain spendthrift and forfeiture provisions attached to the entitlements. Defendant Riggs National Bank ("Riggs") is the trustee of the trust fund.

In 1983, the Internal Revenue Service ("IRS") determined that William D. Zantzinger, one of Isabel Zantzinger's three children, owed $78,182.05 in unpaid federal income taxes, interest and penalties. By

"Notice of Levy," served October 18, 1983, and "Final Demand," served May 23, 1984, the IRS seized all property in possession of Riggs belonging to William Zantzinger, not to exceed $78,182.05.

Until service of the levy, Riggs made regular distributions of the trust's income to William Zantzinger. Once the levy was served, Riggs took the position that certain forfeiture provisions of the trust wiped out William Zantzinger's entitlement under the trust. Therefore, Riggs paid over to the IRS $1,948.23 in income accumulated prior to October 18, 1983 but not distributed to Zantzinger. Riggs maintains, however, that any further income has been forfeited. Income that has accrued since October 18, 1983 therefore has been accumulated and held by Riggs pending the outcome of this litigation.

Under the trust, there is a paragraph which limits William Zantzinger's life estate in the trust income ("Trust C"). The paragraph begins with what is called a "spendthrift" clause, which prevents William Zantzinger from transferring his right to the income or from subjecting it to the claims of his creditors. It reads:

No part of the income or principal of the Trust C estate hereunder shall be pledged, assigned, transferred, sold, or in any manner whatsoever accelerated, anticipated, or encumbered by my said son, William Devereux Zantzinger, nor shall any part of the income or principal of said trust estate hereunder be in any manner subject to or liable, in the hands of the Trustee, for the debts, contracts, or engagements of my said son, whether existing at the time of my death or arising subsequently.

The same paragraph ends with what is called a "forfeiture" clause, which strips William Zantzinger of the right to the income should he try to alienate it and gives the trustee considerable discretion in then distributing the trust funds. It reads:

Should my said son attempt in any manner to anticipate, encumber, or charge his interest in this trust or any part thereof, and in the event of bankruptcy

or the rendition of any judgment or decree against the interest of my said son, or the levy of any execution, or writ of attachment, or garnishment thereon, or if, in the judgment of the Trustee, it shall be to my said son's interest, then any amounts which would otherwise be paid over directly to my said son, shall, in the discretion of the Trustee, be applied directly for his support and maintenance, or be allowed to accumulate in the hands of the Trustee and be treated as and form a part of the principal of the trust estate from which it was derived and be disposed of as a part thereof.

The IRS believes that these clauses are not properly invoked in this case and that the income accumulated since 1983 (rather than paid over to William Zantzinger) is now owed the IRS. Riggs believes that William Zantzinger's right to the income was forfeited and that the discretionary aspect of the trust prevents treating the income as a property right against which the government may levy to satisfy a tax assessment. The IRS responds that the property right was not forfeited, and even if the forfeiture clause was triggered, it cannot defeat an internal revenue assessment as a matter of federal law.

To ensure that William Zantzinger's three children do not choose to participate in this action, this court has received statements from each to that effect, filed April 25, 1986.

## II. *Discussion*

Inasmuch as there appear to be no genuine issues of fact in dispute, this matter is appropriately dealt with on cross-motions for summary judgment. The question presented is whether the United States can reach the income stream of the Zantzinger trust (despite its "spendthrift" and "forfeiture" provisions) pursuant to the government's statutory tax liens against all "property and rights to property" of a delinquent taxpayer. This involves two analytically separate issues: (1) was there a property right forfeited by William Zantzinger; and (2) can, as a matter of federal

law, such a forfeiture provision defeat an internal revenue assessment.

### A. *Was a property right forfeited by William Zantzinger?*

26 U.S.C. §§ 6331–32 establish the IRS' ability to levy against property belonging to a taxpayer and 26 U.S.C. § 7403 provides for foreclosure of a tax lien. Determining whether certain proceeds are the "property" of an individual, however, requires this court to review state property law. *Magavern v. United States,* 550 F.2d 797, 800 (2d Cir.), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977). The parties appear to agree and this court concludes that determination of the property passed by Isabel Zantzinger's trust must be done in accordance with the law of the State of Maryland, where the trust was created.

■ Maryland accepts the use in a trust of a "spendthrift" clause subject to certain exceptions. *Watterson v. Edgerly,* 40 Md. App. 230, 388 A.2d 934, 935–36 (1978). If income is withheld under such a clause, the beneficiary may sue to get it; therefore there is a property right upon which someone such as the IRS may levy a claim.

■ Yet many states allow the use of forfeiture and trustee-discretion provisions to create a "protective trust", whereby if either the beneficiary or his creditors try to alienate the beneficiary's right to trust income, then that right ceases and the trustee is given discretion to distribute the income among some group that may or may not include the prior beneficiary. *See Restatement (Second) of Trusts,* § 150, Comment c (1959). Since the beneficiary has no right to the income until the trustee decides when and how to distribute it, the beneficiary in such a situation has no property right upon which the IRS may levy. *See Nichols v. Eaton,* 1 Otto. 716, 722–25, 91 U.S. 716, 722–25, 23 L.Ed. 254 (1875) (protective trust, after forfeiture, confers no "substantial rights," or right which a court would enforce, so a right to income did not pass to assignee in bankruptcy); *McGavern v. United States,* 550 F.2d 797 (2d

Cir.), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977) (government lien was effective under trust in which income payments were not completely discretionary with the trustee); *United States v. Taylor,* 254 F.Supp. 752 (N.D. Cal.1966) (where forfeiture provision is illusory and beneficiary may continue to receive entire income, a property right exists and a levy may occur). Though Riggs cites no Maryland law supporting such treatment of a "protective trust," this court agrees that a Maryland court would treat the use of forfeiture and trustee discretion provisions as creating a "protective trust."

The question then becomes whether the government's levy or other collection efforts triggered a permanent forfeiture of William Zantzinger's interest. Riggs contends that it is now within Riggs' discretion to use the income that would have gone to William Zantzinger either (1) for the support and maintenance of William Zantzinger or (2) as part of the principal of the trust estate, to be disposed of as part thereof. Since this determination is a discretionary one, William Zantzinger has had no right to income from the trust since October 18, 1983 and has had no enforceable interest upon which the IRS can levy.

The government contends that the language of the forfeiture clause shows that mere service of an administrative internal revenue levy was not intended to trigger a forfeiture of William Zantzinger's right to trust income. The government interprets the clause to require *both* an attempt by Zantzinger to alienate his interest *and* an external event such as bankruptcy, judgment, or levy of execution. The trustee could only invoke the clause on its own if Zantzinger attempted to alienate his interest. Since Zantzinger never tried to alienate his interest, the forfeiture clause is inapplicable.

Riggs responds that the language shows that *either* an attempt to alienate *or* some external event triggers forfeiture. This court agrees with Riggs that either situation can lead to forfeiture; the clear intent

of the trust was to prevent William Zantzinger from recklessly mortgaging away all his future rights in the the trust income.

Riggs believes that forfeiture was triggered by an encumbrance caused by William Zantzinger. When someone fails to pay tax liabilities after demand, a statutory lien on all his property arises in favor of the government. 26 U.S.C. § 6321. By neglecting to pay his taxes, William Zantzinger caused all his property—including his interest in the trust income—to be encumbered by a statutory lien. Riggs also believes that the government's levy triggered forfeiture. Both lien and levy come within the natural meaning of the testamentary language and are broad enough to include such actions taken administratively rather than just judicially.

The government argues that Zantzinger did not "attempt" to encumber his trust income in the sense meant by the trust language. Further, the service of an internal revenue levy is not a "rendition of any judgment or decree against the interest" of Zantzinger, nor a "levy of any execution, or writ of attachment, or garnishment ...". As the government sees it, a prejudgment internal revenue levy is an administrative levy that falls outside the language of the trust. A "levy of execution" is a term of art under Maryland law referring to the act of execution by a judgment creditor on a judgment already obtained.

■ This court agrees with the government. Maryland law requires that a will which purports to limit a beneficiary's enjoyment of his interest under a spendthrift clause must state that limitation in clear and unequivocal terms. *Manders v. Mercantile Trust & Deposit Co.*, 147 Md. 448, 128 A. 145, 149 (1925). While it is clear that Mrs. Zantzinger sought to restrict her son from squandering his future income stream, this court sees a distinction between language designed to prevent general creditor forclosure and language that would stop government assessments. Other states have accepted distinctions in trust language based on whether the creditor is a private or public entity. *See, e.g., Indus-*

*trial National Bank v. Budlong,* 106 R.I. 780, 264 A.2d 18 (1970) (inherent distinction exists between private creditors and the government in respect of the underlying purpose of a forfeiture clause in a spendthrift trust). As that court noted:

We perceive nothing in the language employed from which it may be reasonably inferred that the intent of the testator was to relieve the beneficiary from the payment of obligations which arise out of his status as a member of society, particularly such as the payment of taxes properly and legally assessed. We have carefully scrutinized the language used by the testator and find nothing therein that is persuasive of an intention that the limitation on the liability of the income to payment of debts was to extend beyond those debts arising out of normal and conventional commercial transactions.

264 A.2d at 24. This court finds that while Mrs. Zantzinger may have intended to protect her grandchildren from having their interests in her estate dissipated by reckless spending by her son, she could not have intended that her son be able to avoid liability for income taxes on some of the very income he earned from the trust. Therefore, it was improper for Riggs to treat the tax collection process itself as triggering foreclosure under Maryland law.

B. *Can such a Forfeiture Provision Defeat a Federal Assessment?*

■ Even if forfeiture did occur under Maryland law, it would not be effective against an IRS assessment. Whether state law can prevent a federal tax lien from attaching to a state-created interest by creating a forfeiture whenever the government tries to levy is a question of federal law. *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Many courts have held that a simple spendthrift trust cannot defeat a federal tax lien. *See, e.g., First Northwestern Trust Co. v. Internal Revenue Service,* 622 F.2d 387 (8th Cir.1980). One federal court has held that a spendthrift trust combined with a forfeiture clause is not effective to defeat a federal tax lien.

*United States v. Taylor,* 254 F.Supp. 752 (N.D. Cal.1966). In *Taylor,* the forfeiture was found illusory; in this case William Zantzinger may continue to receive benefits from the trust for his "support and maintenance." *Taylor* reached this result after balancing the policies of state property law and policies of federal tax collection, as called for in *Aquilino:*

(O)nce the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property." ... This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes.

363 U.S. at 513–14, 80 S.Ct. at 1280–81 (citations omitted).

The reasoning behind all the cases that say a federal tax lien cannot be defeated by a pure spendthrift trust supports the idea that it also cannot be defeated by a forfeiture provision. The point is that while such trust clauses create a legitimate property right under state law which can shield the beneficiary from ordinary creditors, such trusts cannot be effective against a federal tax lien, as a matter of federal law. *Cf. United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971) (wife liable for federal income tax on marital property even though state law right to such property was renounced). It would be offensive and disruptive to federal tax law for a beneficiary to receive an income stream for years without paying taxes on it, only to have the income stream disappear once the IRS discovers the misfeasance and moves against it.

An appropriate Order accompanies this Memorandum.

## ORDER

Upon consideration of cross-motions for summary judgment and the entire record herein, it is by the Court this 30th day of April, 1986,

ORDERED that the motion for summary judgment of defendant Riggs National Bank be, and the same hereby is, DENIED; and it is further

ORDERED that the motion for summary judgment of plaintiff United States of America be, and the same hereby is GRANTED; and it is further

ORDERED that the statutory liens of the United States pursuant to 26 U.S.C. § 6321 in respect of the unpaid income tax liabilities of defendant William D. Zantzinger for the years 1976, 1977 and 1978, be and hereby are FORECLOSED as against all income earned by Trust C of the Trust known as the Isabel G. Zantzinger Trust u/w C b/o William No. 011047–01, from October 18, 1983 until said liabilities are satisfied, or until the death of William D. Zantzinger, whichever first occurs; and it is further

ORDERED that defendant Riggs National Bank shall immediately turn over to the United States all such income earned by said Trust from October 18, 1983 until the date of this Order, excepting the $1,948.23 of such income which defendant Riggs National Bank has previously turned over to the United States; and it is further

ORDERED that defendant Riggs National Bank shall continue to turn over to the United States at regular intervals, and no less than semi-annually, all income earned by said Trust from the date of this Order until the tax liabilities described above have been fully satisfied, or until the death of William D. Zantzinger, whichever first occurs.